UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BARBARA STUART ROBINSON,

        Plaintiff,

   v.

TACOMA COMMUNITY COLLEGE,

        Defendant.

CASE NO. C10-5151BHS

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

     This matter comes before the Court on Defendant Tacoma Community College's ("TCC") motion for summary judgment (Dkt. 80). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

     On March 3, 2011, Plaintiff Barbara Stuart Robinson ("Robinson") filed a complaint against TCC alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–65; § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; and RCW 49.60.030. Dkt. 5.

     On August 8, 2011, TCC filed a motion for summary judgment. Dkt. 80. Robinson responded that same day. Dkt. 81. On August 29, 2011, TCC replied. Dkt. 86. Robinson filed a supplemental pleading that same day. Dkt. 87.

ORDER - 1

## II. FACTUAL BACKGROUND

Robinson was an enrolled student at TCC in the spring quarter of 2010. Dkt. 36, Declaration of April Reid ("Reid Dec."), ¶ 3. On April 21, 2010, TCC alleges that Robinson engaged in threatening and disorderly conduct towards other students. *Id*. On April 22, 2010, TCC conducted an initial suspension hearing and, after the hearing, TCC placed Robinson on academic suspension for one quarter because the hearing officer found that Robinson had violated the student conduct code. *Id*.

On April 30, 2010, TCC conducted a follow-up hearing. *Id*. ¶ 4. Ms. Reid states that Robinson exhibited the same aggressive behavior at the hearing that Robinson had engaged in on April 21, 2010. *Id*. Ms. Reid sent Robinson a letter notifying Robinson of the suspension as well as Ms. Reid's "concerns regarding [Robinson's] inappropriate behavior" at the follow-up hearing. *Id*. The letter stated that Robinson's conduct toward the other students on April 21, 2011, violated two provisions of the TCC Student Conduct Code:

> a. WAC 132V-120-050(1) (engaging in physically and/or verbally abusive conduct which threatens bodily harm or endangers the health or safety of others); and
> b. WAC 132V-120-050(2) (engaging in disorderly, lewd, indecent, or obscene conduct).

*Id*. ¶ 3. In addition to the suspension, TCC imposed the following sanction on Robinson:

> You may re-enroll as a student at [TCC] under the condition that you provide documentation of a medical evaluation and an active treatment plan for bi-polar disorder and manic depression. This documentation must be presented to Dolores Haugen in the Student Services Administration office in Building 7.

*Id*., Exh. A.

On March 28, 2011, after Robinson initiated this action, TCC's Vice President of Student Services, Mary Chikwinya, sent Robinson a letter clarifying the issues regarding Robinson's suspension. Dkt. 37, Declaration of Mary Chikwinya ("Chikwinya Dec."), Exh. B. Ms. Chikwinya stated that the basis for Robinson's suspension was "behaviors

ORDER - 2

1 [Robinson] demonstrated that were threatening to staff and disrupting of the teaching and
2 learning environment at TCC." *Id*. TCC dropped the requirement of a medical
3 evaluation for Robinson's bi-polar disorder and manic depression. Instead, Ms.
4 Chikwinya asserted that TCC would "require assurance that [Robinson's] disruptive
5 behavior has been addressed . . . ." *Id*.

Ms. Chikwinya also addressed "comments [Robinson] made in one class in which [Robinson] indicated that [she was] 'manic-depressive' and 'bi-polar.'" *Id*. Ms. Chikwinya asserted that Robinson has never provided TCC with any documentation of a disability or a request for reasonable accommodation. *Id*.

### III. DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## B. TCC's Motion

Robinson claims that TCC violated Title II of the ADA, § 504 of the RA, and RCW 49.60.030. TCC requests that the Court enter summary judgment in its favor because Robinson is unable to provide evidence to support every element of her claims. Dkt. 80 at 5.

Title II of the ADA prohibits public entities from discriminating against the disabled. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Section 504 of the Rehabilitation Act similarly prohibits federally-funded programs from discriminating against the disabled. *Id*. To bring a prima facie discrimination case under the Acts, a plaintiff must produce evidence that (1) she meets the Acts' definition of disabled, (2) she meets the eligibility requirements of the school regardless of reasonable accommodations, (3) the school denied her access or participation in its program solely because of her disability and, (4) the school receives federal financial assistance (with respect to the RA) and/or is a public entity (with respect to the ADA). *Wong v. Regents of Univ. of*

*California*, 192 F.3d 807, 816 (9th Cir. 1999); *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999).

"Whether a person is disabled under the [Acts] is an 'individualized inquiry.'" *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001) (quoting *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999)) (stating such with respect to the ADA). "Disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual"; "a record of such impairment"; or "being regarded as having such an impairment . . . ." 42 U.S.C. §§ 12102(1)(A), (B), and (C); 29 U.S.C. § 706(8)(B). Specifically, a plaintiff proves that she is impaired if she proves that she has a mental impairment, the impairment limits a major life activity, and the limitation is substantial. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 194-95 (2002) (discussing the rule in the context of employment discrimination).

With regard to Washington's anti-discrimination law, RCW 49.60.030, the Court decides these claims using the same analysis it uses to interpret federal anti-discrimination law. *Kees v. Wallenstein*, 161 F.3d 1196, 1199 (9th Cir. 1998).

In this case, Robinson has failed to submit admissible evidence for each element of her claim. First, Robinson has failed to submit any documentation that shows that she is disabled. Robinson alleged that she informed her peers that she is bipolar and manic depressive (*see* Chikwinya Dec., Exh. B), but an unsupported allegation is not admissible evidence that Robinson provided information to TCC that she was disabled.

Second, Robinson has failed to submit any evidence that TCC discriminated against her solely because of her alleged disability. The evidence submitted by TCC shows that TCC suspended Robinson because of her conduct toward other students. Chikwinya Dec., Exh. A.

Therefore, the Court grants TCC's motion for summary judgment because Robinson has failed to meet her burden of submitting admissible evidence for every element of her claims.

**C.    TCC's Counterclaims**

On September 14, 2011, the Court struck certain deadlines pending the outcome of TCC's motion. Dkt. 88. The Court requests a status report from TCC no later than October 7, 2011 regarding its intent to pursue its counterclaims and whether new deadlines should be set.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that TCC motion for summary judgment (Dkt. 80) is **GRANTED**. TCC must submit a status report as directed herein.

DATED this 27th day of September, 2011.

BENJAMIN H. SETTLE
United States District Judge